# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ROBERT T. WALKER,

               Plaintiff,

    vs.

DAVID STEVENS, *et al.*,

               Defendants.

Case No.: 2:15-cv-01383-GMN-NJK

**ORDER**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 21), filed by Defendants David Stevens and Jaouad Bouakka (collectively "Defendants"). Plaintiff Robert Walker ("Plaintiff")[1] filed a response, (ECF No. 29), and Defendants filed a reply, (ECF No. 30). For the reasons discussed herein, Defendants' Motion for Summary Judgment is **GRANTED**.

## I.   <u>BACKGROUND</u>

This case arises out of alleged constitutional violations that occurred during Plaintiff's incarceration at High Desert State Prison ("HDSP"). (Compl. at 1, ECF No. 3). Plaintiff is an inmate in the lawful custody of the Nevada Department of Corrections ("NDOC"). (*See* Defs.' MSJ 2:3–5, ECF No. 21). On August 7, 2014, Plaintiff filed an informal grievance to Defendant Stevens concerning the lack of hot water in the showers and an inoperable telephone in Unit 11. (Grievance, Ex. A to Defs.' MSJ, ECF No. 21-1). Plaintiff was not the only inmate who shared these concerns. According to Defendant Stevens, he had been informed that multiple inmates were planning to file mass grievances and perform a "sit in" due to the shower and phone issues. (Stevens Decl. ¶ 5, Ex. B to Defs.' MSJ, ECF No. 21-2).

---

[1] In light of Plaintiff's status as a pro se litigant, the Court has liberally construed his filings, holding him to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

On August 13, 2014, Defendant Stevens responded to the potential unrest by conducting approximately sixty bed moves of the inmates housed in Unit 11 at HDSP. (*Id.* ¶ 4). Defendant Stevens states that he was "concerned that the inmates would organize a work stoppage in Unit 11," and therefore conducted the bed moves "in an effort to thwart any possible coordinated effort by the inmates to interrupt the facilities normal operations." (*Id.* ¶ 6). Five days later, Defendant Stevens conducted additional bed moves, which included moving Plaintiff back into a cell with his original cellmate. (*Id.* ¶¶ 9, 10). According to Defendant Stevens, the bed moves were a "normal part of prison life because the inmate population continuously fluctuates and inmate factors and statuses change." (*Id.*).

In contrast, Plaintiff alleges that Defendant Stevens conducted the bed moves in retaliation for the grievances concerning the shower and phone. (*See* Compl. at 4). Furthermore, Plaintiff alleges that Defendant Stevens "went out of his way to [ensure] that the white inmates that got moved were placed back in the cell with their original cell mates . . . [and Plaintiff] along with several other Black inmates were not returned to the cells with their original cell mates" until five days later. (*See id.* at 5–6). Following the bed moves, Plaintiff alleges that Defendants engaged in a retaliatory campaign that resulted in: (1) a "Notice of Charge" against Plaintiff for abusive language and failure to follow rules, which was later dismissed for lack of evidence; and (2) the loss of Plaintiff's employment at the coffee shop. (*Id.* at 9–10).

On July 20, 2015, Plaintiff initiated this action before the Court. (IFP Application, ECF No. 1). On December 16, 2015, after the magistrate judge conducted an initial screening, Plaintiff filed his Complaint alleging First Amendment retaliation and Fourteenth Amendment equal protection claims pursuant to 42 U.S.C. § 1983. In the instant Motion, (ECF No. 21), Defendants seek summary judgment on Plaintiff's claims.

## II.  **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and

the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. <u>DISCUSSION</u>

In the instant Motion, Defendants argue, *inter alia*, that Plaintiff failed to exhaust his administrative remedies prior to bringing this action because he did not properly exhaust NDOC's grievance procedure. (Defs.' MSJ 13:23–15:22). The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42

U.S.C. § 1997e(a). Exhaustion in prisoner cases is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). The PLRA requires "proper exhaustion" of administrative remedies. *Id.* at 93. Proper exhaustion "means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issues." *Griffin v. Arpaio*, 557 F.3d 1117, 1119–20 (9th Cir. 2009).

Courts should decide exhaustion before examining the merits of a prisoner's claim. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Id.* at 1169, 1172. Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

To determine whether Plaintiff properly exhausted the available administrative remedies pursuant to the PLRA, the Court will address each of Plaintiff's grievance issues in turn.

### A. Grievance Issue 72406

In their Motion for Summary Judgment, Defendants argue that Grievance Issue 72406 does not pertain to Plaintiff's equal protection or retaliation claims and therefore does not support Plaintiff's contention that he exhausted administrative remedies. (Defs.' MSJ 14:13–18). The Court agrees.

NDOC's administrative regulations provide that "[a]ll documentation and factual allegations available to the inmate must be submitted" with the Informal Grievance. (AR 740.05(5)(A) at 6). Here, the allegations raised in Grievance Issue 72406 are limited to

Plaintiff's disagreement with his security threat group status and therefore are unrelated to the instant lawsuit. (*See* Ex. I to Defs.' MSJ, ECF No. 21-9). Notably, the grievance fails to raise any allegations towards Defendants concerning the bed moves or any subsequent retaliation scheme. Accordingly, the Court finds that Plaintiff's submission of this grievance does not demonstrate proper exhaustion of administrative remedies.

### B. Grievance Issue 85055

In contrast to the above grievance, Grievance Issue 85055 does include allegations concerning Defendant Stevens and the at-issue bed moves. (*See* Ex. J to Defs.' MSJ, ECF No. 21-10). Regardless, Defendants argue that this grievance fails because Plaintiff abandoned his attempts to exhaust his administrative remedies before the conclusion of the grievance process. (Defs.' MSJ 14:13–18). The Court agrees.

Defendants' Motion for Summary Judgment includes a copy of the NDOC Administrative Regulation (AR) 740, entitled "Inmate Grievance Procedure," which governs the NDOC grievance policy. (AR 740, Ex. H to Def.'s MSJ, ECF No. 21-8). In order for a plaintiff to exhaust available remedies, AR 740 first requires the inmate to discuss the issue with a caseworker prior to initiating the grievance process. (AR 740.04 at 5). The procedure then proceeds as follows: (1) an Informal Grievance; (2) a First Level Grievance appealing the Informal Grievance decision to the warden; and (3) a Second Level Grievance, which is decided by the Assistant Director of Operations. (AR 740.05–.07 at 5–10). "In the event an inmate's claim is deemed inappropriate for review or not within the intended scope of this Regulation, the inmate may appeal that decision only to the next procedural level of review." (AR 740.03(5) at 4). "An inmate who is dissatisfied with the response to a grievance at any level may appeal the grievance to the next level" within five days after the return of a decision. (AR 740.03(6) at 4).

Here, Plaintiff's Informal Level Grievance was denied for lack of standing. (*See* Ex. J to Defs.' MSJ). While Plaintiff did initiate the first step of the appeal process, the appeal was ultimately rejected as untimely. (*Id.*). To the extent Plaintiff disagreed with the First Level Grievance decision, the record is devoid of any evidence that Plaintiff filed a second level grievance in accordance with AR 740.03(6).

Nonetheless, Plaintiff argues that he exhausted his administrative remedies by receiving an answer on appeal, "[r]egardless of what the Administration provides as an answer." (Pl.'s Resp. at 12, ECF No. 29). However, the Supreme Court's ruling in *Woodford* directly rejected this argument. In *Woodford*, the Supreme Court found that, in order to properly exhaust administrative remedies, an inmate must comply with the agency's deadlines and other critical procedural rules. *See Woodford*, 548 U.S. at 90. As Plaintiff's first level appeal was untimely, the Court finds that Plaintiff failed to properly exhaust administrative procedures as to this grievance issue.

### C. Grievance Issue 85056

In regard to Grievance Issue 85056, Defendants argue that Plaintiff abandoned his attempts to exhaust his administrative remedies. Defendants are correct. Plaintiff improperly filed more than one grievance pertaining to the same allegations under this log number, which resulted in one of the grievances being rejected as duplicative and therefore in violation of NDOC procedure. (*See* Ex. K to Defs.' MSJ, ECF No. 21-11; *see also* Ex. C to Pl.'s Resp., ECF No. 29-3). As to the remaining grievance, Plaintiff's First Level Grievance appeal was denied, and the record does not indicate that Plaintiff filed a second level grievance. (*Id.*).

### D. Failure to Exhaust Administrative Remedies

Based on the foregoing, the Court finds that Plaintiff failed to properly exhaust administrative procedures with regard to his First Amendment retaliation claim and Fourteenth Amendment equal protection claim as required by 42 U.S.C. § 1997e(a). Plaintiff's grievances

violated critical procedural rules, and Plaintiff failed to exhaust each step of the administrative process. Accordingly, the Court finds that Plaintiff's claims are not proper before this Court and therefore grants Defendants' Motion for Summary Judgment.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgement, (ECF No. 21), is **GRANTED**.

The Clerk of the Court shall enter judgment accordingly and close the case.


**DATED** this ___26___ day of September, 2017.


_____
Gloria M. Navarro, Chief Judge
United States District Judge